F I L E D
United States Court of Appeals
Tenth Circuit

NOV 6 2003

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

EDGAR E. CHAMBERS,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 03-7007
(D.C. No. 02-CV-123-S)
(E.D. Okla.)

---

ORDER AND JUDGMENT  *

---

Before **TYMKOVICH** , **HOLLOWAY** , and **ANDERSON** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Edgar E. Chambers appeals from a district court order affirming the Commissioner's refusal to reinstate his social security disability benefits following their termination under the alcoholism provisions of the Contract with America Advancement Act of 1996, Pub. L. No. 104-121, § 105(a)(1)(C), (5). *See* 42 U.S.C. § 423(d)(2)(C). "[W]e closely examine the record as a whole to determine whether [the Commissioner's] decision is supported by substantial evidence and adheres to applicable legal standards." *Berna v. Chater*, 101 F.3d 631, 632 (10 th Cir. 1996) (quotation omitted). "The scope of our review, however, is limited to the issues the claimant properly preserves in the district court and adequately presents on appeal[.]" *Id.* For the reasons stated below, we reverse.

Plaintiff was initially found disabled as of January 1993 based on "alcoholism, seizure disorder, and left leg arteriosclerotic peripheral vascular disease," which left him with a residual functional capacity (RFC) for sedentary work "reduced by his inability to work at unrestricted heights or around moving machinery and his inability to sustain work on a regular and reliable basis." App. at 32. After his benefits were terminated under the Act, he sought an "entitlement redetermination," § 105(a)(5)(C), requiring him to show that alcohol was not "a contributing factor material to the determination of disability," i.e., that he would still be disabled if he stopped drinking, 20 C.F.R. § 404.1535(b).

Plaintiff waived a new evidentiary hearing. Upon review of the existing record, the administrative law judge (ALJ) found that (a) plaintiff had an RFC for sedentary work "limited further by the requirement that he perform only simple and unskilled work that is performed in a non-public work setting and that does not require regular work attendance;"[1] (b) these further limitations–which were "solely due to [plaintiff's] frequent and daily alcohol consumption"–precluded his "adjustment to work which exists in significant numbers in the national economy;" (c) in contrast, if plaintiff had an unrestricted sedentary RFC, the regulations "would direct a conclusion of 'not disabled;'" and (d) consequently, "alcoholism is a contributing factor material to the finding of his disability." App. at 18-19. The Appeals Council denied review of the ALJ's decision.

Plaintiff sought judicial review in the district court. While that action was pending, the Commissioner filed a motion to remand under 42 U.S.C. § 405(g), "to fully develop and update the record," hold a new evidentiary hearing, and permit a thorough reevaluation of plaintiff's impairments and how they relate to his use of alcohol. App. at 157-58. Over plaintiff's objection, the district court fully granted the Commissioner's request, remanding "for further administrative proceedings as outlined in the Motion." *Id.* at 154-55.

---

[1] The ALJ did not impose any restrictions relating to plaintiff's seizure disorder, which he concluded was not severe. *See* App. at 14

Additional medical evidence was obtained and the ALJ held an evidentiary hearing to secure new testimony from plaintiff and professional testimony from a vocational expert (VE). The ALJ again denied benefits, but on different predicate findings. The ALJ recognized plaintiff had severe impairments, including "alcohol addictive disorder, seizure disorder, and depressive disorder." App. at 138. Although the ALJ discussed plaintiff's alcoholism in his evaluation of the evidence, he did not make explicit findings about its contributive role in plaintiff's asserted disability, presumably because of the inconclusive nature of the medical record on the question. Rather, the ALJ found that (a) plaintiff had the RFC for "a significant range of light work," in that he could "lift and/or carry 40 pounds occasionally and 25 pounds frequently; stand and/or walk 4 out of 8 hours; [and] sit at least 6 out of 8 hours;" (b) this RFC was limited by an inability to "perform detailed or complex job tasks, work with the general public, or work around . . . unprotected heights or dangerous moving machinery;" (c) plaintiff did not have applicable transferable skills from past work; but (d) plaintiff could still perform numerically significant jobs in the national economy as identified by the VE, including bagger, assembler, and collar turner, and, thus, "was not under a 'disability' . . . at any time through the date of this decision." *Id.* at 138-39. The Appeals Council once again denied review and plaintiff returned to the district court.

Plaintiff challenged the ALJ's decision on four grounds, though these incorporated multiple interrelated arguments. The magistrate judge issued a report and recommendation in favor of the Commissioner, which the district court summarily approved over plaintiff's objections. We consider the various issues raised on appeal, and where appropriate the district court's disposition thereof, in order of analytical convenience below.

## Alcohol as Contributing Factor

Plaintiff argues that the evidence as to whether alcohol is a "contributing factor" within the meaning of § 423(d)(2)(C) is inconclusive and, therefore, that the ALJ erred in refusing to reinstate benefits. However, as the magistrate judge noted, the controlling analysis proceeds in discrete steps, the first of which is the threshold determination whether the claimant has demonstrated a disability at all; only if that "condition precedent" is satisfied must the ALJ assess the role alcohol abuse plays in the demonstrated disability. *Drapeau v. Massanari*, 255 F.3d 1211, 1214-15 (10 th Cir. 2001). As explained above, the ALJ determined that plaintiff was not disabled *per se*. Thus, the evidence regarding the contributive role of alcohol in plaintiff's impairments was immaterial to the ALJ's disability determination. By the same token, when we review plaintiff's substantive challenges to that determination, we must consider *all* evidence of impairment, without regard to indications of alcohol involvement.

## Incomplete Psychiatric Findings

Plaintiff contends the ALJ violated 20 C.F.R. § 404.1520a(e)(2) by failing to include in his decision the substantive findings regarding psychologically based functional limitations which the regulation formerly required to be set out on a Psychiatric Review Technique (PRT) form. *See generally Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10 th Cir. 1995) (discussing and enforcing former PRT requirement). He notes that PRT forms completed at earlier stages of his case, including those attached to the two prior ALJ decisions, found significant limitations which are not directly addressed in the decision under review.

Some of the assessments required by the regulation might arguably be sufficiently inherent in the ALJ's ultimate findings to obviate concerns that the functional limitations in question had gone unaddressed. For example, the ALJ's restrictions regarding detailed/complex tasks and work with the public may reflect consideration of basically the same functional areas designated in the regulation as "activities of daily living" and "social functioning." § 404.1520a(c). Indeed, one ALJ who earlier had specified limitations in these categories on a PRT form ultimately recognized task and personal-interaction work restrictions similar to those recognized in the ALJ decision under review. *See* App. at 18, 22.

There is, however, at least one important omission in this respect that cannot be discounted in this manner. The regulation requires assessment of any functional limitation in "concentration, persistence or pace," § 404.1520a(c), which the PRT specifically relates to the failure "to complete tasks in a timely manner," App. 22, 36. Substantial limitations recognized in this category on prior PRT forms translated, as common sense would suggest, into findings regarding plaintiff's "inability to sustain work on a regular and reliable basis" and his need for an occupational setting "that does not require regular work attendance." App. at 32, 36; *id.* at 18, 22. This critical factor is not directly considered in the ALJ decision under review. Nor is it inherently accounted for through a related work restriction in the ALJ's ultimate findings. [2] In short, there is no indication that the ALJ satisfied his duty under the regulation to assess this area of functional limitation–which was a matter significant enough to call into question plaintiff's basic day-to-day reliability as a worker, whatever the occupation.

---

[2] We recognize the essentially tautological point that restricting a claimant to simple tasks can address a deficiency in concentration, persistence and pace *if* that deficiency *was found to apply only to complex tasks*, *see Howard v. Massanari*, 255 F.3d 577, 582 (8 th Cir. 2001); *Black v. Apfel*, No. 97-5044, 1997 WL 767519, at **1-**2 (10 th Cir. Dec. 11, 1997). Here, however, it would be pure speculation to hold that the ALJ's failure to make the explicit functional assessment required by the regulation is obviated by a task-dependent qualification that he never made.

## Challenge to VE Testimony

Plaintiff notes that the Commissioner's own definition of light work, which requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," Soc. Sec. Rul. (SSR) 83-10, 1983 WL 31251 at *6; *see also* SSR 96-9p, 1996 WL 374184 at *6, sets a standard not met by the ALJ's specific finding that plaintiff could stand/walk for only 4 hours of an 8-hour workday. As a result, he argues the VE's identification of light-work jobs he could perform rested on a mistaken understanding of RFC. In the same vein, he notes that the VE's testimony deviated from the Dictionary of Occupation Titles (DOT), which classifies the exertional level of the jobs in question as light, and argues that the ALJ's failure to clarify the facial inconsistency involved violated this court's directive in *Haddock v. Apfel*, 196 F.3d 1084 (10 th Cir. 1999), that any conflicts between a VE's testimony and the DOT must be adequately explained before the VE's opinion may provide the basis of decision. While we cannot say, as to the first point, that the VE actually misapplied RFC principles, that is only because, per the second point, we lack the explicit explanation *Haddock* requires the VE to provide for her divergence from the pertinent DOT classifications.

In *Haddock*, this court discussed at length the potential for conflict between a VE and the DOT whenever the VE opines about an occupation's suitability for a claimant whose functional capacity (or skill level) falls short in some particular

-8-

way from the categorical specifications set out in the DOT. *See id.* at 1089-92. We acknowledged that general DOT classifications do not inherently trump a VE's testimony when there is a conflict about the nature of a particular job. *Id.* at 1091. We also recognized, however, that when the burden has shifted to the Commissioner to determine the functional demands of specific jobs and match those to a claimant's limitations, it is improper to allow the ALJ to rely on summary VE conclusions that conflict with the DOT unless the ALJ obtains some explicit clarification justifying reliance on the judgment of the VE. *Id.* at 1090. Thus, we held "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* at 1091. No such explanation was obtained here for the VE's identification of jobs which, at least as generally specified in the DOT, exceed the functional capacity found by the ALJ. Under controlling circuit precedent, the ALJ's decision cannot stand on its stated rationale.

RFC Determination

Finally, plaintiff contends the ALJ's RFC determination was flawed in two respects. His broadest challenge invokes res judicata and/or collateral estoppel. Citing the initial ALJ decision on his entitlement redetermination, which denied benefits based on alcoholism but in the process found him capable of only a

limited range of *sedentary* work, plaintiff insists the ALJ who heard his case on remand from the district court was precluded from finding him capable of light work. Preclusion principles do not apply, however, as the initial redetermination decision never became final but, rather, was unconditionally vacated when the case was remanded by the district court. *See generally United States v. Lacey*, 982 F.2d 410, 412 (10 th Cir. 1992) (holding judgment that has been vacated, reversed, or set aside is deprived of all preclusive effect).

Plaintiff raises problems of a more substantial nature with respect to the ALJ's reliance on a July 2001 consultative report from Dr. Sherman Lawton to find him capable of light work. First of all, the ALJ's reliance on this report for "opinions regarding [plaintiff's] functional limitations" is at odds with the ALJ's immediately preceding statement that medical records submitted by plaintiff from 1999 "are not relative [sic] for the purpose of determining whether [plaintiff] was disabled prior to the date his insured status expired [i.e., December 31, 1997]." App. 134-35. Further, Dr. Lawton failed to discuss a 1995 functional assessment indicating physical restrictions clearly contrary to a light RFC. *See id.* at 253. Significantly, such restrictions were based on laboratory testing and clinical diagnosis of peripheral vascular disease, *see id.* at 304, 309-14, and Dr. Lawton admitted he did not have the records relating to this medical problem, *id.* at 614 (noting plaintiff "may have vascular insufficiency of the legs, which would be an

additional problem, but I have no studies in that regard"). In sum, though we need not rest our disposition on this issue, we note that the ALJ's heavy reliance on Dr. Lawton's report for a definitive RFC determination was problematic.

Conclusion

For the reasons discussed above, we reverse and remand for further proceedings by the Commissioner. After two determinations finding plaintiff disabled as of the expiration of his insured status, revisitation of that threshold issue at ever more remote junctures seems ill advised. We encourage the Commissioner to focus, rather, on the issue prompting the termination and redetermination of plaintiff's entitlement to benefits: Is alcoholism a contributing factor within the meaning of § 404.1535(b) such that plaintiff would not be disabled if he ceased drinking?

The judgment of the district court is REVERSED, and the cause is REMANDED with directions to remand, in turn, to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

Stephen H. Anderson
Circuit Judge

-11-